FRANK A. WEISER (#89780)
Attorney at Law
3460 Wilshire Blvd., Ste. 1212
Los Angeles, California 90010
(213) 384-6964 - (voice)
(213) 383-7368 - (fax)
maimons@aol.com - (e-mail)

Attorney for Defendant
NJ Properties Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BYRON CHAPMAN, | ) | No. CV16-02893-EJD |
| | ) | |
| | ) | DEFENDANT'S RESPONSE |
| | ) | AS TO ARTICLE III |
| | ) | STANDING AND DAMAGES |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | DATE: November 5, 2018 |
| MUNDO'S CAFE, ET AL., | ) | TIME: 9:00 a.m. |
| | ) | CTRM: 4 |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

1

# I,

## INTRODUCTION

The Defendant NJ Properties, Inc. ("NJ") is the legal owner of the subject property and the lessor of Mundo's Cafe ("MC") which has also been sued in this action.

Plaintiff entered a default against NJ on September 13, 2016. NJ was not represented by counsel at the time default was entered against it and it's present counsel ("Weiser") was hired to represent NJ after such default was entered.

After NJ hired Weiser to represent it in this case, Weiser contacted Thomas Frankovich, Esq. ("Frankovich"), the attorney of record for the plaintiff, and requested in several conversations that the default against NJ be vacated and that NJ be permitted to file an answer to the complaint.

On February 20, 2017, NJ filed an ex-parte application to vacate the default and for leave to file an answer to the complaint which was granted by the court. At the time the ex-parte was granted, the present Article III judge was assigned to the case in lieu of the magistrate judge.

NJ contends that it purchased the subject property on April 19, 2016 before plaintiff allegedly first came to the property and does not control the lessee MC.

In Weiser's conversations with plaintiff's counsel, Frakovich requested that he send proof that NJ did not own the subject property at the time of the incident.

On February 3, 2017, Weiser sent Frankovich by e-mail a copy of a grant deed that Rakesh Panchal, recorded and vesting title to the subject property on April 19, 2016 in NJ's name.

Subsequently, plaintiff rejected NJ's claim that it was not liable claiming that the grant deed indicates that it was signed signed and notarized on January 28, 2016, prior to the date that plaintiff allegedly entered onto the subject property.

Plaintiff has no evidence that NJ was in possession or control of the subject property prior to April 19, 2017 and, in fact, NJ entered into a written lease agreement with Mundo's Cafe on April 27, 2017. A copy of the grant deed and lease agreement are attached as Exhibits "A" and "B".

As of October 11, 2017, all alleged ations of the ADA have been addressed and the subject property is in compliance. A copy of pictures taken on Wednesday, October 11, 2017, by Mr. Panchal is attached hereto as Exhibit "C".

On May 11, 2018, Plaintiff entered into an agreement to dismiss the Defendant MC. the site where the claimed barriers were encountered in exchange for payment of $15,000 and compliance with ADA requirements.

Plaintiff in its pre-trial conference statement now requests that this Court hold a trial on alleged violations that were not alleged in the original complaint, or for that matte in the First Amended Complaint. Further, Plaintiff requests that it be allowed to seek damages

without any offset from its settlement with Mundo's. This is contrary to settled Ninth Circuit law which does not allow a double recovery.

## II.

## ARGUMENT

## A. PLAINTIFF LACKS ARTICLE III STANDING AGAINST THE DEFENDANT NJ

Article III of the U.S. Constitution limits the jurisdiction of the district court and requires as "the irreducible constitutional minimum of standing" that plaintiff show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural orhypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury, will be redressed by a favorable decision." Krottner v Starbucks Corp., 628 F.3d 1139, 1141 (9th Cir. 2010).

As an initial matter, NJ strongly disagrees that plaintiff has Article III standing to sue it for alleged ADA violations before it took title and possession to the subject property as plaintiff's injury is notr fairly traceable to the challenged action of NJ. As was stated in Section I., there is no evidence that NJ was in possession or control of the subject property prior to April 19, 2017 and, in fact, all the evidence is to the contrary as NJ obtained legal title by way of the graht deed on April 19, 2017 and entered into a written lease agreement with Mundo's Cafe on April 27, 2017. (Exhibits "A"-"B").

4

In <u>Arizonans for Official English v Arizona</u>, 520 U.S. 43 (1996), the U.S. Supreme Court held that Article III standing required standing for each stage of the litigation. This requirement certainly emcompasses the requirement that standing exist at the time the complaint is filed. See <u>Preiser v v Newkirk</u>, 422 U.S. 395, 401 (1975) (to qualify as a case fit for federal court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed).

As to the Plaintiff encountering barriers on March 11, 2016 and May 9, 2016 (Complaint, pg. 10, paragraph 26), this was close to a year before Defendant NJ took possession and title to the subject property, Plaintiff lacked standing against Defendant NJ at the very outset of the litigation. This cannot be cured by manufacturing alleged new visits to the property after the complaint was filed. See Brother v CPL Investments, Inc., 317 F.Supp.2d 1358 (S.D. Fla. 2004) (plaintiffs in ADA case do not have standing complain about alleged barriers they were unaware of at the time of the filing of the complaint)..

Further, the settlement between the Plaintiff and MC now renders this case moot, certainly as to the requested injunctive relief.

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." <u>Pitts v Terrible Jerbst, Inc.</u>, 653 F.3d 1081, 1086 (9th Cir. 2011). Because the power of a federal court to decide the merits of a claim ordinarily evaporates whenever a prerequisite to standing disappears, the doctrine of mootness has been described as "the doctrine of standing set in a time frame." <u>Native Village of Noatak v Blatchford</u>, 38 F.3d 1505, 1509 (9th Cir. 1994).

5

"The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." Rutz v City of Santa Maria, 160 F.3d 543, 549 (9th Cir. 1998).

Assuming, arguendo, that NJ did have possession and control of the subject property at the time that this action was initiated, the claimed deficiencies have been corrected and there is no effective equitable relief that the district court can fashion. If Plaintiff claims that they are not corrected, then Plaintiff's remedy is still moot as it agreed that such relief would come from MC, the owner and operator of the Cafe. A request for injunctive relief remains live only so long as there is some present harm left to enjoin and past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any contiungf, present adverse effects. O'Neal v City of Seattle, 66 F.3d 1064, 1066 (9th Cir. 1995).

Plaintiff claims statutory damages for the claimed violations but, as argued earlier, at the time of the initial claimed violations plaintiff lacks standing against NJ.

It has long been held that costs standing alone are insufficient to confer Article III jurisdiction "where non exists on the merits of the underlying clsim." Steel Co. v Citizens for a Better Env't, 523 U.S. 83, 107 (1998). Rather, case or controversy sufficient to confer Article III jurisdiction exists only when succeeding in the litogation will afford "the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation."

6

Finally, the Ninth Circuit clearly holds that a double recovery of damages, costs or attirney fees are prohibited, both under this circuit's case law and under California law. See <u>Bravo v City of Santa Maria</u>, 810 F.3d 659, 668 (9th Cir. 2016) (finding that a recovery of costs and attorney's fees in a 42 U.S.C. Section 1983 action against one defendant pursuant to a settlement agreement must be offset against the remaining defendant and further holding that this rule is consistent with California law).

II.

**CONCLUSION**

Therefore, Defendant NJ respectfully requests that the case be dismissed against Defendant NJ.

DATED: November 4, 2018          Respectfully submitted,

LAW OFFICES OF
FRANK A. WEISER

By: _____
FRANK A. WEISER, Attorney
for Defendant NJ PROPERTIES
INC.

7

EXHIBIT "A"

TICOR TITLE-ER DPS

DOCUMENT: 2016020552

| | |
|---|---|
| Fees | 21.00 |
| Taxes | 7365.00 |
| Oths | .00 |
| [total] | 8386.00 |

RECORDING REQUESTED BY
Ticor Title Company of California

MAIL TAX STATEMENTS AND
RECORDED DEED TO:

NH Properties, Inc., a Washington corporation
200 Mercedero Rd.
Morro Bay, CA 93442

A.P.N:

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
Documentary Transfer tax is $7,365.00 City Tax is $ 0.00

☒ computed on full value of interest or property conveyed, or

☐ full value less value of liens or encumbrances remaining at the time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Vista Real Hospitality, Inc., a California corporation

hereby GRANT(S) to:

NH Properties, Inc., a Washington corporation

the following real property in the City of Monterey, County of Monterey, State of California:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Dated: January 26, 2016

Vista Real Hospitality, Inc., a California corporation

By: _____
Vice President/President

By: _____
Secretary/President, V. P. Secretary

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# NOTARY SEAL

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of notary _____

Commission number _____

County where bond is filed _____

Date Commission Expires _____

Manufacturer / Vendor Identification number _____

PLACE OF EXECUTION: _____

DATE: _____

SIGNATURE: _____
                          _____ / DPS Agent



PRELIMINARY REPORT
```
```  REFERENCE

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MONTEREY, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

LOTS 18 AND 19 IN BLOCK 5, AS SHOWN AND DELINEATED ON THE MAP OF LIVE OAKS PARK, FILED ... IN ... OF MAPS ... IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF MONTEREY, STATE OF CALIFORNIA, AND ...

PARCEL II:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF THE COUNTY ROAD ...

PARCEL III:

BEGINNING AT THE ...

1
2
3
4
5
6
7
8
9
10
11
12
13
14          EXHIBIT "B"
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# California Commercial Lease Agreement

This commercial Lease Agreement ("Lease") is made and effective April 5th, 2017, is upon the date of execution the Real Estate located at 2237 N. Fremont St. Monterey, CA 93940 commonly known as the Real Property, Monterey, Monterey's, 93940 [Date], by and between:

<u>Rakesh Panchal for NJ Properties (as "Landlord" ("Landlord") and  Eli Munoz for Munoz's Cafe  ("Tenant")</u>

Landlord is the owner of land and improvements commonly known and numbered as 2235 N. Fremont St. Monterey St., CA 93940, (831) 656, 9744 Purchase of Building and legal description of the buildings (the "Building") [Date] Quote Legal Description of the Land.)

Landlord makes available for lease a certain Building designated as building of [ Leased Building] the Premises ("Premises")

Tenant desires to lease the Building and premises to the Landlord. Tenant desires to lease the Leased Deposit from Landlord for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

In consideration of the mutual promises herein, the parties covenant and agree as follows and as described in the content.

## Term

1. Landlord hereby lets the Premises to the and premises to the and premises hereby accepts this upon this Land the Term of this Lease beginning April 4th, 2017 [Start Date] and end on April 4th, 2018  for one (1) year from the date of execution of the Real Estate or lease of 2237 N. Fremont St. Building, CA 93940 commonly known as the Real Property, Monterey, Monterey's 93940 [End Date].

2. Tenant shall pay to Landlord during the initial Term rental of $19,200_____.00 [Annual Rent] per year, payable in installments of $1,600.00 [Monthly Rental Amount] per month. Each installment payment shall be due in advance on the first day of each and every month during the lease term to Landlord at 2235 N. Fremont St. Monterey CA [Landlord's Designated Payment Address] or at such other place designated by written notice from Landlord or Tenant. The rental payment amount for any partial calendar months included in the Lease term shall be prorated on a daily basis. Tenant shall also pay to Landlord a "Security Deposit" in the amount of $1,600.00 [Security Deposit].

## Use

Notwithstanding the foregoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

## 4. Sublease and Assignment

Tenant shall have the right without Landlord's consent, to assign this Lease to a corporation with which Tenant may merge or consolidate, to any subsidiary of Tenant, to any corporation under common control with Tenant, or to a purchaser of substantially all of Tenant's assets. Except as set forth above, Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent, such consent not to be unreasonably withheld or delayed.

## 5. Repairs

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, Also damage that is not due through normal habitual wear at Tenant's expense all pending repairs remains hereof at Tenant's term through to all the Leased Premises and at the Tenant's damages habitual through normal property.

Tenant should be restricted from any uses, effects or matters as to the property it rented by law or the City of Property.

## Alterations and Improvements

Tenant, at Tenant's expense, shall have the right (following Landlord's consent) to remodel, redecorate, and make additions, improvements and replacements of same to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

## Property Taxes

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term of the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises. Tenant shall be responsible for the payment of personal property taxes with respect to Tenant's personal property on the Leased Premises.

## Insurance

a. If the Leased Premises or any other part of the building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees, or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

b. Landlord shall maintain fire and extended coverage insurance on the building and the Leased Premises in such amounts as Landlord shall determine appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

c. Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify the Tenant that a policy is due to expire at least thirty (30) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the building.

## Utilities

Tenant shall pay all costs, expenses, and charges whatsoever for electricity, heat, water, gas, natural gas, telephone, and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant agrees that it will not load electrical wiring to provide standard office use electrical facilities and standard office lighting. Tenant shall not install any equipment or devices that utilize excess electrical energy or which may, in Landlord's reasonable judgment, overload the wiring or interfere with use of other tenants.

## Signs

For Tenant, landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, such signs which are permitted by applicable zoning ordinances and proper regulations. Landlord may allow such signs only provided that sign that is in Landlord's opinion too large, offensive, unattractive or otherwise inconsistent with the appearance of the Leased Premises, class of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permits or other governmental authorities of adjoining owners and other parties for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

## 1. Entry.

Landlord shall have the right at any time on the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

## 2. Parking.

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord and other tenants of any building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footways, subject to rules and regulations for the use thereof as may be from time to time by Landlord. Landlord reserves the right to designate parking areas within the building or in reasonable proximity thereto, for Tenant and Tenant's agents and employees.

## 3. Building Rules.

Tenant will comply with the rules and regulations attached hereto and such other reasonable rules and regulations as may be adopted from time to time and will cause its employees, agents and invitees to comply. All changes to such rules will be sent by Landlord to Tenant in writing. The initial rules for the building are attached hereto as Exhibit "___" and incorporated herein for all purposes.

## 4. Damage and Destruction.

Subject to Section 8, if all or any of the Leased Premises or any part thereof or any improvements thereto is so damaged by fire, casualty or structural defects that the same cannot be used, for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, or if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises.

## 5. Default.

If default shall be made in the payment of any sum required to be paid by Tenant as herein provided, and if such default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by Tenant, and such default shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord without correction thereof then having been commenced and thereafter diligently prosecuted, Landlord may declare the term of this Lease ended and terminate the same by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, and shall in any event use reasonable efforts to mitigate its damages.

## 6. Condemnation.

If any legally constituted authority, condemns the Premises in such way that it shall make the Leased Premises unsuitable for Tenant, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rents as of that date.

## Security Deposit

The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrearages of rent or to satisfy any other covenant or obligation of Tenant hereunder. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of this Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant.

## Notices

Each notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

[ILLEGIBLE NAME]

[ILLEGIBLE]
(Landlord)

[ILLEGIBLE] BELMONT ST., [ILLEGIBLE]
(Landlord's Address)

If to Tenant to:

[ILLEGIBLE]

[ILLEGIBLE]
(Tenant)

[ILLEGIBLE] BELMONT [ILLEGIBLE]
(Tenant's Address)

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

## Brokers

Tenant represents that Tenant has not had any dealings with any realtor, broker or agent and that Tenant has not in any way associated, nor enabled Landlord to associate, the parties to this claim for real estate commission, brokerage fee, finder's fee or other similar compensation in connection with this Lease.

## Headings

The headings used in this Lease are for convenience purposes only and shall not be considered in interpreting or construing this Lease.

## Successors

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

## Consent

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required under this Lease.

## Performance

If there is a default in respect of any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than ninety (30) days after notice in writing is sent from Tenant to Landlord specifying the default, Tenant may, at its option and without prejudice to any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the unreimbursed balance plus accrued interest to Tenant.

## Compliance with Law

Tenant shall comply with all rules, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. These include any laws, regulations, and rules governed by the City of Watrines, CA. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises. Neither party, Landlord or Tenant, is responsible for the other party's breach of any laws, rules, and regulations. Landlord and Tenant each acknowledge take full responsibility of any issues that may occur in regards to compliance with the law.

## Final Agreement

This Lease terminates and supersedes all prior understandings or agreements on the subject matter hereof. This agreement may be modified only by a written amendment signed by both parties.

## Governing Law

This agreement shall be governed, construed and interpreted by, through and under the Laws of the State of California.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

INCORPORATED
BY LEGAL PERSONAL

_____
[Tenant Signature Block]

_____
[Date]

LANDLORD'S CARE
BY LANDLORD

_____
[Landlord Signature Block]

_____
[Date]

EXHIBIT "C"





Sent from my iPhone